IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ARLENE Y. CALLADO,

       Plaintiff,

v.                                                            CIV 09-00818 KBM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.


# **MEMORANDUM OPINION AND ORDER**

       THIS MATTER is before the Court on Plaintiff Arlene Callado's motion to reverse or remand the Commissioner's decision denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *Docs. 17, 18, 20.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 4, 8.*

       If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *See Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005). A deficiency in either area is independent grounds for relief. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004). "'Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quoting *Grogan*, 399 F.3d at 1261-62). I can neither reweigh the evidence nor substitute my judgment for that of the agency. *Hamlin*, 365 F.3d at 1214; *see also Langley v. Barnhart*,

373 F.3d 1116, 1118 (10th Cir. 2004). Thus,

> "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200. We may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.*

*Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).

The entire record has been meticulously reviewed. *See, e.g., Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). The issue is straight forward. The Court, therefore, will only recite the facts which are necessary for its disposition. For the reasons set forth below, Plaintiff's motion is granted, and the matter is remanded to the Commissioner for further proceedings.

## The Sequential Evaluation Process

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Social Security Administration employs a "five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). "If at any step in the process the Secretary determines that the claimant is disabled or is not disabled, the evaluation ends." *Thompson*, 987 F.2d at 1486.

At steps one through three of the process, the claimant must show that: she is not working at a substantial gainful activity; she has a severe medically determinable physical or mental impairment or combination of impairments which significantly limit her ability to do

basic work activities; and she has an impairment that meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that it meets the duration requirement. *See* 20 C.F.R. §§ 404.1520, 416.920.  If the claimant has an impairment that meets or equals one of the listed impairments and the duration requirement, she will be deemed disabled.  If not, the analysis proceeds to step four.  At step four, the ALJ must assess and determine the claimant's residual functional capacity ("RFC") and consider, in light of this RFC, whether the claimant can still do her past relevant work.  *See id.*  If the claimant can still do her past relevant work, she will not be deemed disabled.  *Id.*  At the fifth and final step, the Commissioner must show that the claimant is capable of performing "an alternative job that is available in the national economy in light of the claimant's age, education, and work experience."  *Madron v. Astrue*, 311 F. App'x 170, 175 (10th Cir. 2009) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

**Background**

Plaintiff, now fifty-six years old, completed the tenth grade before dropping out of high school.  *See Administrative Record (Record)* at 15, 16.  Plaintiff has previous work experience including cleaning for a hotel, working in the fast food industry and as a janitor.  *Id.*  Plaintiff last worked as a school janitor up until December of 2005 when she quit due to back pain and hearing loss.  *Id.*  On August 17, 2006, Plaintiff filed her application for DIB and SSI alleging a January 1, 2006 onset of disability due to obesity and hearing loss.  *See id.* at 53, 101, 106.  When a claimant seeks DIB, she must establish disability while in insured status.  *McQuestion v. Astrue*, 629 F. Supp. 2d 887, 892 (E.D. Wis. 2009) (citations omitted); *see also Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347-49 (10th Cir. 1990).  The Record indicates that Plaintiff has acquired sufficient quarters of coverage to remain insured through December 31,

2010.  *Record* at 45.  Thus, in this case, Plaintiff is required to show that she was disabled on or before December 31, 2010, her date last insured.

Plaintiff's application was denied both initially and upon reconsideration.  Plaintiff then requested a hearing before an ALJ.  Plaintiff appeared with Douglas Holtsoi, her nephew and non-attorney representative, on October 22, 2008 at a hearing in Farmington, New Mexico, before ALJ George W. Reyes.  *See id.* at 11, 12.  Also present were vocational expert ("VE") Judith Beard and a Navajo interpreter.  *Id.*

The ALJ issued an unfavorable decision denying Plaintiff DIB and SSI on March 18, 2009.  *Id.* at 42.  Although the ALJ determined that Plaintiff had severe impairments which included right ear hearing loss, obesity, a left knee impairment, and a spinal impairment, he concluded that Plaintiff had the RFC for medium work.  *Id.* at 48.  Additionally, however, the ALJ noted several physical limitations and found that Plaintiff would be limited to occupations that do not require fine hearing capability or involve excessive noise and vibrations, or concentrated exposure to hazards.  *Id.*  Plaintiff would further be limited to occupations that require only simple routine tasks, not performed in a fast paced work environment.  *Id.*  With the aid of testimony from the VE, the ALJ determined that Plaintiff was able to perform her past relevant work as a housekeeper.  *Record* at 51.  Accordingly, the ALJ concluded that Plaintiff was not under a disability from January 1, 2006 through the date of his decision.  *Id.* at 52.

Plaintiff requested review of the ALJ's decision.  *See id.* at 5.  The Appeals Council denied review in June 2009, thereby rendering the ALJ's decision final.  *Id.* at 1; *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) ("Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal.").

**Legal Analysis**

*Failure to Develop the Record*

Plaintiff raises a single issue - that the ALJ failed to develop the record regarding her hearing impairments. Specifically, she argues that the ALJ should have ordered an audiological consultative examination based on the evidence in the record that she suffered from hearing loss. *See Docs. 18, 20.*

The ALJ has a general duty to fully and fairly develop the record as to material issues. *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993). The duty to develop the record is heightened, however, when the claimant is not represented by counsel. *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citing *Dixon v. Heckler*, 811 F.2d 560, 510 (10th Cir. 1987)).

When a Plaintiff alleges that the ALJ failed to develop the record by not obtaining a consultative examination, the issue "is to decide what quantum of evidence a claimant must establish of a disabling impairment or combination of impairments before the ALJ will be required to look further." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). An ALJ is afforded broad latitude in determining whether or not to order consultative examinations. *Id.* (citing *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990)).

> Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, *see* 20 C.F.R. § 404.1519a(b)(4), or where the medical evidence in the record is inconclusive, *see Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir.1993), a consultative examination is often required for proper resolution of a disability claim. Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary.

*Hawkins*, 113 F.3d at 1166.

"The difficult cases are those where there is *some* evidence in the record or *some* allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling." *Id.* at 1167.  In determining how much evidence is sufficient to raise an issue that requires further investigation, the Tenth Circuit has concluded that "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id.*

The record reveals that Plaintiff was referred to Dr. Richard Kozoll for a general consultative examination on November 17, 2006.  *See Record* at 195.  With regards to her hearing, Dr. Kozoll reported that Plaintiff complained of progressive loss of hearing on her left side for the past three years and that she evidenced difficulty hearing during the exam, particularly from her left side.  *Id.* at 195-96.  He stated that examination of her left ear revealed that the canal was filled with a cerumen plug.  *Id.* at 196.  He further reported that testing with a 250-hertz tuning fork revealed no hearing on the left side and diminished hearing on the right side.  *Id.*  In summary, Dr. Kozoll stated, "She has greatly diminished hearing in her left ear that I did not explore further because of a cerumen plug.  It is unlikely that the cerumen is the cause of her deafness on her left side, by her history." *Id.* at 197.  Dr. Kozoll also stated that Plaintiff has mild decreased hearing on her right side.  *Id.*

Also at the administrative hearing, Plaintiff stated that she considered her hearing loss to be one of her worst problems, and that she quit her job because of it.  The following discussion took place between ALJ Reyes and Plaintiff through the interpreter on the issue of her hearing loss:

> Q    With respect to your hearing loss, do you have hearing aids?

> A   No.
> Q   Has any doctor ever recommended or prescribed for you that you get hearing aids?
> A   They don't say.
> Q   Who have you seen for your hearing problems?
> A   PMS
> Q   Do you recall the name of the doctor?
> A   Dr. Arnold.
> Q   Have you ever had what's called an audiology report where they test your hearing?
> A   Yes.  At San Juan she recalls that she had a hearing test.  She says it was approximately 10 to 12 years ago.  But at that time her hearing wasn't as bad as today.
> Q   How do you know that your hearing is getting worse?
> A   She says that back then when she - - her coworkers talked to her, she could hear them.  But now when they talk to her, she doesn't hear them.  She can hear, but she doesn't here [sic] like from back then.

*Record* at 28.  Other than the examination by Dr. Kozoll, the Record contains very little medical evidence pertaining to Plaintiff's hearing loss.

The ALJ expressly relied on Dr. Kozoll's report in making his determination, yet the ALJ determined that it was Plaintiff's ***right*** ear hearing loss that constitutes a severe impairment. *Record* at 47 (emphasis added).  Again, Dr. Kozoll reported that the 250-hertz tuning fork testing revealed "***no hearing on the left side***" and diminished hearing on the right side.  *See id.* at 196 (emphasis added).  This information clearly suggests a reasonable possibility of a severe impairment and should have alerted the ALJ to the need for further testing because the medical evidence pertaining to Plaintiff's hearing loss for both right and left ears was inconclusive. Additional testing would have helped to explain the limited diagnosis contained in the record and possibly implicated other occupational limitations resulting from her hearing loss.

Moreover, the exam by Dr. Kozoll was performed in 2006, the administrative hearing was two years later in 2008, and there are no records of any specific audiological testing ever

7

conducted on Plaintiff. These facts further support the conclusion that additional investigation was necessary and an audiological "consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169. This is especially true given that Plaintiff was not represented by counsel at the administrative hearing and the ALJ's heightened duty to assure that the record was complete.

The ALJ relied in part on the fact that "the claimant has not been prescribed an assistive hearing device." While the Record does not indicate that Plaintiff has been treated for hearing loss, contrary to the ALJ's statement, records from San Juan Regional Hospital reveal that Plaintiff is indeed hard of hearing. *See id.* at 228. The ALJ also specifically observed that "the claimant did not exhibit any apparent difficulty responding to my questions or difficulties in communicating" at the hearing. *Id.* These observations are obviously relevant, but they do not satisfy the ALJ's obligation to develop the record as hearing limitations in the workplace environment.

Simply put, the Record does not contain a conclusive statement from a doctor regarding Plaintiff's hearing loss from which the ALJ could make an informed decision. On remand, the ALJ should further develop the record regarding Plaintiff's hearing loss only and its impact on her ability to do work related activity.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion is granted and the matter is remanded to the Commissioner for further proceedings consistent with this Order. A final order will be entered concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.